IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

  v.

NEVILLE LYIMO,

      Defendant.

Case No.  11-CR-162
Judge Gregory L. Frost

## ORDER

This matter came on for consideration upon Defendant's Motion to Withdraw Plea (ECF No. 55) filed on December 20, 2012 and upon the Government's Memorandum in Opposition (ECF No. 58) filed on January 3, 2013.  For the reasons that follow, the Court finds Defendant's Motion to Withdraw Plea to be not well taken and the Court **DENIES** the same.

### I.  BACKGROUND

The background of this case is informative because some of the history of this case informs the factors that the Court will discuss later.  The Government provided a chronological summary of the case in its Memorandum Contra.  That chronological summary is reproduced here:

> In March, 2011, prior to the filing of any charges, the undersigned Assistant United States Attorney began discussions with Lyimo's attorney, Kevin Conners, regarding the possibility of a Plea Agreement and Information to resolve this matter.
>
> On April 2, 2011, in order to provide Lyimo with more time to consider his options, Lyimo executed a 2 ½ month waiver of the Statute of Limitations.
>
> On June 14, 2011, in the absence of any agreement between the parties, a complaint and arrest warrant were filed against Lyimo in District Court.

On June 21, 2011, an Indictment was returned by the Grand Jury charging Lyimo with twenty-seven counts of violations of 26 U.S.C. §7206(2).

On September 1, 2011, Lyimo was arraigned on the Indictment. The delay in scheduling the arraignment was due to the government now knowing Lyimo's location. The Court scheduled trial to begin on October 24, 2011.

On October 17, 2011, Lyimo's counsel filed a motion to continue the date for trial.

On October 18, 2011, the Court entered an Order rescheduling trial to February 6, 2012.

On January 18, 2012, upon having received notification that a plea agreement had been reached, the Court scheduled a change-of-plea hearing for January 26, 2012.

On January 25, 2012, counsel for Lyimo filed a motion to continue the change-of-plea hearing.

On January 25, 2012, the Court rescheduled the change-of-plea hearing for February 2.

On February 2, 2012, Lyimo refused to enter the pleas of guilty he had previously agreed to enter. The Court rescheduled trial to begin on April 9, 2012.

On March 3, 2012, Attorney Derek Farmer filed a motion for substitution of counsel.

On March 15, 2012, Attorney Farmer filed a motion to continue the date for trial.

On March 16, 2012, the Court entered an Order rescheduling trial to June 11, 2012.

On May 10, 2012, Attorney Farmer filed a motion to continue the date for trial.

On May 10, 2012, the Court entered an Order rescheduling trial to September 24, 2012.

On July 26, 2012, a Special Agent of the Internal Revenue Service related to the undersigned Assistant U.S. Attorney that he had spoken to a Special Agent of Immigration and Customs Enforcement, Department of Homeland Security ("ICE"), regarding the possibility that Lyimo, who is not a U.S. citizen, was in the United States illegally, having committed marriage fraud with a purported "wife" who is a United States citizen.

On September 23, 2012, Assistant U.S. Attorney Knight sends Attorney Farmer four documents, including two memoranda of interviews of Witness Brian Mahemba occurring on September 18 and September 20, 2012.

On September 24, 2012, jury trial began.

On September 25, 2012, Lyimo executed a Plea Agreement and entered a plea of guilty to Count 16 of the Indictment, which was accepted by the Court. Before the plea was entered, the Court permitted defense counsel sufficient time both (a) to negotiate the terms of the Plea Agreement and the written Statement of Facts to support Lyimo's guilty plea and (b) to explain the substance and meaning of those documents to Lyimo. Part of these negotiations concerned the disclosure to Lyimo and Farmer that ICE may have been investigating Lyimo's marriage status, the basis of his continued legal residence in the U.S.A.

On a date shortly after September 25, 2012, the undersigned Assistant U.S. Attorney conferred with the same ICE Special Agent referenced above (see July 26, 2012, notation) asking that no marriage fraud investigation be undertaken with respect to Lyimo's immigration status in the U.S.A.

On November 20, 2012, counsel for both parties met with U.S. Probation Officer Schal Boucher in an attempt to resolve disputes regarding whether or not Lyimo (a) would be responsible for a tax loss of $24,006, as opposed to $870 (which he contended) and (b) would be permitted "acceptance of responsibility" under Section 3E1.1(a) of the U.S. Sentencing Guidelines. In subsequent days it became apparent that the Presentence Investigation Report ("PSR") would include $24,006 in losses and would not recommend acceptance of responsibility.

On December 20, 2012, Defendant Lyimo filed his motion to withdraw the plea of guilty that had been entered and accepted on September 25, 2012.

In addition to the summary above, important to the inquiry is the Plea Agreement that was filed on September 25, 2012, the same day as the guilty plea to Count 16 was entered. Paragraph 8 reproduced below discusses the issue of the agreement regarding communication with immigration authorities. That paragraph provides:

> 9. The United States Attorney for the Southern District of Ohio agrees to communicate with the immigrant authorities regarding any current investigation regarding Defendant Neville Lyimo's immigration status.

During the plea colloquy Assistant U.S. Attorney Brown confirmed that he would contact immigration authorities regarding the current investigation of Defendant's immigration status. Defendant's counsel confirmed the summary of the plea agreement.

> THE COURT:  (continuing)
>
> Mr. Brown, at this time, then, you can summarize the essential terms of the plea agreement for the Court and for the record
>
> MR. BROWN:  Thank you, Your Honor.
>
> The plea agreement is in writing and was filed, minutes ago, with the Court.  And it's a complete plea agreement.
>
> By the terms of this agreement, Defendant Neville Lyimo, with full knowledge of his rights as well as the potential maximum penalties, has agreed to plead guilty to Count 16 of the indictment, in return for which the government agrees to seek, at sentencing, dismissal of the remaining 16 counts of this indictment.
>
> The United States Attorney also agrees to communicate with the immigration authorities regarding any current investigation regarding Defendant Neville Lyimo's immigration status.
>
> Defendant Lyimo agrees to be permanently enjoined from preparing or filing federal tax returns on behalf of third parties.
>
> And, importantly, in Paragraph #8, that encapsulates the only agreement in this plea agreement regarding the sentencing guidelines.  And this provides that we – that the defendant understands the determination of relevant conduct and restitution regarding the 17 counts.
>
> And it's further agreed that Mr. Lyimo has accepted responsibility for the offense, is entitled to a two-level reduction; and, at the time of sentencing, the United States won't object to this so long as his conduct continues to demonstrate compliance with the terms of 3E1.1, which has to do with acceptance of responsibility.
>
> And we also agree that this paragraph concerning the sentencing guidelines does not bind the Probation Department and does not bind the Court.
>
> I think that fairly summarizes the important provisions of this plea agreement, Your Honor.
>
> THE COURT:  And that you agree to dismiss the other counts?
>
> MR. BROWN:  Yes, Your Honor.

4

THE COURT: Okay. That might be important to the defendant in this case.

Mr. Farmer, is that your understanding of the plea agreement?

MR. FARMER: Yes, Your Honor.

THE COURT: Thank you.

And, finally as background, the Court includes an excerpt from the plea colloquy which is important because of the Court's fear then that what is pending now would occur. The Court was so concerned that Defendant would attempt to withdraw his plea that the Court specifically inquired of Defendant in the following manner:

BY THE COURT: (Continuing)

Q. Do you understand that any recommendation of a sentence agreed to by your counsel and the government or any agreement by the government not to oppose a sentence requested by your attorney is not binding upon the Court and that you might, on the basis of your guilty plea, receive a more severe sentence than requested or recommended? Do you understand that?

A. Yes.

Q. And do you understand, Mr. Lyimo, if I do impose a more severe sentence, you will still be bound by your plea of guilty, and you will have no right to withdraw your guilty plea? Do you understand that?

A. Yes.

Q. Let me explore this a little further, Mr. Lyimo, just so you understand.

The procedure for this is as follows: After the plea, you'll be referred to the Probation Department for a presentence investigation report. The Probation Department will prepare this presentence investigation report. And in that presentence report, it will make a calculation of sentencing pursuant to the guidelines, and the probation officer will also make a recommendation with regard to a sentence in this case. Your attorney will get a copy of it, and I'm sure he will share it with you, and you'll review it.

When you review it, sometimes what happens is a defendant says, wait a minute, I don't like this recommendation that the probation officer is making concerning a sentence in this case. And so you say to Mr. Farmer, I want to withdraw my guilty plea because I just don't like the way I see this going.

Too late.  Do you understand it's too late then?

A.  Right.

Q.  Today is the day.

A.  Right

Q.  Either you proceed today with the plea, or we proceed today with trial.  Do you understand?

A.  Correct

Q.  You cannot decide to change your mind, later on, based upon what you see in a probation report.  You understand that?

A.  Correct

THE COURT:  All Right.  The Court will, then, defer its decision as to the acceptance or the rejection of the plea agreement until it has had an opportunity to consider the presentence report in this matter.

## II.  STANDARD AND APPLICABLE LAW

The withdrawal of guilty plea prior to sentencing is a matter "within the broad discretion of the district court," *United States v. Spencer*, 836 F. 2d 236, 238 (6th Cir. 1987), and is governed by Rule 11(d)(2)(B) of the Federal Rules of Criminal Procedure.  In order to withdraw a guilty plea before sentencing, a defendant must "show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B).  The purpose of Rule 11(d) "is to allow a hastily entered plea made with an unsure heart and confused mind to be undone, not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes he made a bad choice in pleading guilty." *United States v. Bozzi*, 94 F. 3d 1025, 1027 (6th Cir. 1996).

In considering Defendant's request to withdraw his guilty plea, the Sixth Circuit has identified several factors that the district court must consider.  The factors include (1) the timeliness of the motion, (2) any reason for untimeliness, (3) assertion of innocence, (4) the

6

circumstances surrounding the guilty plea, (5) the background of the defendant, (6) the defendant's exposure to the criminal justice system, and (7) prejudice to the government if the motion is granted.  *United States v. Bashara*, 27 F. 3d 1174, 1181 (6th Cir. 1994).  These factors "are a general, non-exclusive list and no one factor is controlling."  *United States v. Bozzo.* 94 F. 3d 1025, 1027 (6th Cir. 1996).  In reviewing these factors, courts do not look favorably on requests to withdraw guilty pleas that are motivated by tactical considerations.  *United States v. Pluta*, 144 F. 3d 968, 973 (6th Cir. 1998).  The defendant has the burden of establishing the existence of a fair and just reason supporting the withdrawal of the guilty plea.  *Id.*

### III.  APPLICATION OF FACTORS

#### A.  The timeliness of the motion and reason for untimeliness

Defendant waited eighty-six (86) days before he filed his motion to withdraw his guilty plea.  Defendant gives no reason for the delay but it is obvious that Defendant waited until after he saw what the presentence report was going to reveal.  This is exactly what this Court warned Defendant about in the quoted transcript above.  This Court gave Defendant fair notice that he would not be permitted to withdraw his guilty plea after he saw the outcome of the presentence investigation.

The Sixth Circuit has upheld decisions of lower courts that concluded that a thirty-five (35) day delay and a forty-two (42) day delay between entering guilty pleas and filing motions to withdraw weighed heavily against the defendants' request to withdraw their pleas.  *United States v. Khouri*, No. 04-4338, 2006 U.S. App. LEXIS 5465, *9-10 (6th Cir. 2006) (citing *United States v. Spencer*, 836 F. 2d 236, 239-40 (6th Cir. 1987) (thirty-five days); See *also United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994) (forty-two days), abrogated on other grounds by

statute as provided in *United States v. Caselorente*, 220 F. 3d 727 (6th Cir. 2000).  As previously stated, the delay involved in the case *sub judice* is eighty-six (86) days.  The amount of time that elapsed between Defendant's guilty plea and his request to withdraw his plea weighs heavily against granting Defendant's motion given the holdings in *Spencer* and *Bashara*.  Further, Defendant provides no reason for the delay which also weighs against Defendant.

      **B.  The assertion of innocence.**

Defendant does not assert that he is innocent of the charge to which he entered the plea of guilty.  Rather, he attacks the witnesses who were going to be called at trial by the Government.  The problem with Defendant's argument is that it is now too late to argue that the Government's witnesses lack credibility.  The jury trial began and Defendant elected to plead guilty after one day of trial.  Defendant had the chance to test the witnesses but waived that right.

Defendant also argues that during the first day of trial certain Government exhibits were admitted over his objection.  Again, this is an improper argument as it relates to a motion to withdraw a guilty plea.  Defendant could have made this argument to the Court of Appeals if he had concluded the trial and was found guilty.  By entering the plea of guilty on the second day of trial, Defendant waived this right.

This factor weighs against granting Defendant's motion.

      **C.  The circumstances surrounding the plea.**

Defendant originally agreed to plead guilty and the Court scheduled the change of plea hearing for January 26, 2012.  At the request of Defendant, that hearing was continued until February 2, 2012.  Defendant then refused to enter the plea of guilty and he obtained new

counsel. The jury trial commencement date was continued two times at the request of the Defendant. Finally, the jury trial commenced on September 24, 2012 but after one day of trial the Court was informed that Defendant had entered into a plea agreement with the Government. The Court did not excuse the jury immediately but waited a considerable amount of time to permit Defendant and the Government to negotiate some remaining terms of the agreement and to allow counsel to explain everything to Defendant.

The Court then proceeded with a change of plea hearing. The Court meticulously questioned Defendant about his desire to enter the plea of guilty, his understanding of the plea agreement, the possible penalty involved, and his agreement with the statement of facts that presented a clear picture of Defendant's criminal activity.

Defendant argues that the Government "agreed to run interference with Immigrations so that Mr. Lyimo will not be deported." Defendant cites to paragraph 10 of the plea agreement but it is actually paragraph 9, which is reproduced above. That paragraph indicates that the United States Attorney agreed to communicate with the immigration authorities regarding "any current investigation regarding Defendant NEVILLE LYIMO'S immigration status." The Government's Memorandum in Opposition indicates that it did exactly what it agreed to do. Apparently, within days of the plea being entered, the Assistant U.S. Attorney contacted immigration authorities and conferred with an investigator asking that "no marriage fraud investigation be undertaken with respect to Lyimo's immigration status in the U.S.A." Defendant does not dispute that the conversation occurred. Defendant's position is that the Government agreed to intercede regarding the conviction involving tax fraud and the possibility of extradition as a result of that conviction. The plea agreement does not support Defendant's argument. It refers to "any current investigation" and does not refer to any future investigation. The Government complied

9

with its duty pursuant to paragraph 9 of the plea agreement and Defendant will not now be heard to complain.

The change-of-plea hearing was scheduled after plea negotiations had occurred and after the plea agreement had been filed with the Court. The Court took great care in questioning Defendant regarding his desire to enter the guilty plea. Defendant admitted in open court that he understood the charge, that he understood the elements of the charge, that he was aware of the potential sentence that could be imposed, and that he was satisfied with his attorney's advice and representation in this matter. Defendant was given ample opportunity to consult with his counsel during the plea colloquy. This Court found then and this Court finds now that Defendant entered a competent, knowing, voluntary, and intelligent plea of guilty.

For these reasons, this factor strongly favors denial of Defendant's Motion to Withdraw.

### D. The background of Defendant

Defendant is 36 years of age and was born in Tanzania. He came to the United States in 1998 and settled in Columbus, Ohio where he has remained until the present. Defendant speaks fluent English and graduated from Franklin University in 2003 with a Bachelor of Science degree in accounting. From 2005 to the present, Defendant has been attending Devry University to obtain his Master's Degree in business. Defendant is presumably married but separated from his wife. They have two children, ages 7 and 3.

This factor neither helps nor hurts Defendant.

### E. Defendant's prior exposure to the criminal justice system

Defendant has had some exposure to the criminal justice system before this case but those cases all involved minor misdemeanor traffic offenses.  The Court agrees with the Government that Defendant has had a considerable amount of exposure to the system in this case which has spanned eighteen months during which Defendant has had two experienced attorneys.

To be fair, however, this factor neither hurts nor helps Defendant.

### F.   Prejudice to the Government if motion is granted

The Government complains that during the long pendency of this case it lost some witnesses who left the country or could not be located which resulted in dismissing ten of the original twenty-seven counts.  The Government claims that further delay will undoubtedly result in more witnesses being lost which will prejudice the Government.

This *Bashara* factor weighs against granting Defendant's motion.

### III.    CONCLUSION

The rule allowing guilty pleas to be withdrawn is designed "to allow a hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty." *Goddard*, 638 F.3d at 493-94 (quoting *United States v. Alexander*, 948 f.2D 1002, 1004 (6th Cir. 1991)).  Also see, *U.S. v. Hyde*, 520 U.S. 670 (1997).  The rule is not designed to "game the system" and delay the proceeding to the prejudice of the Government.

Five *Bashara* factors weigh against granting Defendant's motion and two neither help nor hurt Defendant. Weighing all the factors together, the Court finds Defendant's Motion to Withdraw Plea (ECF No. 55) to be not well taken and the Court **DENIES** the same.

The oral hearing on the Motion to Withdraw Plea is cancelled. The sentencing hearing scheduled for January 24, 2013 is continued until February 1, 2013 at 1:00 p.m.

**IT IS SO ORDERED.**

    **/s/ Gregory L. Frost**
Gregory L. Frost
United States District Judge