**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**NEVILLE LYIMO,**

      **Petitioner,**                        **Case No. 2:15-cv-2910**
                                                   **Crim. No. 2:11-cr-0162**
      **v.**                              **JUDGE ALGENON L. MARBLEY**
                                                       **Magistrate Judge King**

**UNITED STATES OF AMERICA,**

      **Respondent.**

## REPORT AND RECOMMENDATION

Petitioner filed a *Motion to Vacate under 28 U.S.C. § 2255* (Doc. 154) in which Petitioner challenges his conviction ten counts of aiding and assisting in the filing of a false income tax return in violation of 26 U.S.C. § 7206(2). This matter is before the Court on the *Motion to Vacate*, Respondent's *Response in Opposition* (Doc. 158), Petitioner's *Reply* (Doc. 161) and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

### Facts and Procedural History

The facts and procedural history of the case are summarized as follows:

> While operating NetASk [sic] Tax Service, Neville Lyimo assisted a number of African immigrants in preparing their tax returns.
>
> In June 2011, a grand jury in the Southern District of Ohio issued a twenty-seven-count indictment alleging that Lyimo aided in the preparation of false tax returns for sixteen clients from 2004 through 2007 by inflating credits, claiming inapplicable deductions, and miscategorizing taxpayers' filing statuses. At the jury trial on seventeen of the counts, six witnesses testified that Lyimo incorrectly prepared their tax returns. The witnesses were all recent African immigrants and most admitted they were present in the United States illegally at some point.

*United States v. Lyimo*, 574 Fed.Appx. 667, 668 (6th Cir. 2014).

[T]he jury trial in this matter commenced on May 13, 2013. The Government and Defendant presented evidence regarding the seventeen (17) count Indictment charging Defendant in each of the counts with Aiding, Assisting, or Advising in the Preparation of False Income Tax Returns in violation of 26 U.S.C. § 7206(2). After seven days of trial, the jury returned verdicts of guilty on ten (10) of the counts and verdicts of not guilty on seven (7) of the counts. Specifically, the jury found Defendant guilty of:

1. Count 1 (Adimado, 2004 Tax Return):
2. Count 2 (Adimado, 2005 Tax Return):
3. Count 3 (Adimado, 2006 Tax Return):
4. Count 12 (Kessy, 2006 Tax Return):
5. Count 17 (Mbowa, 2004 Tax Return):
6. Count 18 (Mbowa, 2005 Tax Return):
7. Count 19 (Mwangi, 2004 Tax Return):
8. Count 20 (Mwangi, 2006 Tax Return):
9. Count 24 (Poya, 2004 Tax Return):
10. Count 25 (Savage, 2004 Tax Return)[.]

*Order* (Doc. 133, PageID# 2055).  Petitioner filed a motion for judgment of acquittal and motion

for a new trial.  *Corrected Motion for Judgment of Acquittal* (Doc. 127). In denying that motion,

this Court noted in relevant part as follows:

[M]ost of the witnesses who testified in this matter had some issues involving their immigration status. However, those witnesses admitted to their illegal immigration issues and the jury obviously chose to believe their testimony as it related to Defendant and his acts that formed the basis of the charges. . . .

The evidence in this case supports the fact that Defendant ignored the implications of information furnished, ignored the information that Defendant actually knew, or failed to make reasonable inquiries when the information presented was patently false, indirect, or incomplete. Moreover. . .  the filing status of the four taxpayer-witnesses (Adimado, Mbowa, Mwangi, and Savage) was only one of several matters that were plainly false on those tax returns and the jury, in all likelihood, found Defendant guilty based upon the cumulative effect of all of the false information contained in each of the tax returns. . . .

The Government's obligation was to prove beyond a reasonable doubt that Defendant acted in a willful manner when he aided,

> assisted, or advised taxpayers in the preparation of false or fraudulent tax returns and that the tax returns were false or fraudulent as to some material matter necessary to the determination of whether income tax was owed. The statute involved, 26 U.S.C. § 7206(2), is in the nature of an aiding and abetting offense or complicity offense which criminalizes an act undertaken willfully and with knowledge of the illegal circumstances. *United States v. Searan*, 259 F.3d 434, 443 (6th Cir.2001). A taxpayer can be found guilty of acting illegally as can a tax preparer who knowingly and willfully assists in the taxpayer's criminal acts. The Government proved directly and circumstantially that Defendant participated in a pattern of illegal conduct designed to maximize refunds of his clients. The evidence was overwhelming and this Court can find no miscarriage of justice relating to the guilty verdicts.
>
> . . . [T]he Court did not permit Defendant's expert witness to opine on the credibility of some of the witnesses. The expert witness, Jerry Anderson, was recognized by the Court as an expert witness in the field of IRS regulations and tax law. The expert witness was permitted to testify extensively on those subjects. However, the Court prevented the witness from giving an opinion on the credibility of certain taxpayer-witnesses who the expert had no direct contact with and with whom the expert witness had no discussions regarding their contact with Defendant. That line of questioning was clearly improper.

*Order* (Doc. 133, PageID# 2058-60).  On November 5, 2013, this Court imposed a term of imprisonment of 18 months on each count, such sentences to be served concurrently with each other, to be followed by one year of supervised release. *Judgment* (Doc. 138). On July 28, 2014, the United States Court of Appeals for the Sixth Circuit affirmed the judgment of this Court. *United States v. Lyimo*, 574 Fed.Appx. at 667.  On October 14, 2014, the United States Supreme Court denied Petitioner's petition for a writ of *certiorari*. *Lyimo v. United States*, 135 S.Ct. 382 (2014).

Petitioner filed the *Motion to Vacate* on October 14, 2015. He alleges that he was denied the effective assistance of trial and appellate counsel.  Respondent contends that Petitioner's claims are without merit.

**Standard of Review**

In order to obtain relief under 28 U.S.C. § 2255, a petitioner must establish the denial of a substantive right or defect in the trial that is inconsistent with the rudimentary demands of fair procedure.  *United States v. Timmreck*, 441 U.S. 780 (1979); *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (*per curiam*).  Relief under 28 U.S.C. § 2255 is available when a federal sentence was imposed in violation of the Constitution or laws of the United States or when the trial court lacked jurisdiction, when the sentence was in excess of the maximum sentence allowed by law, or when the judgment or conviction is "otherwise subject to collateral attack." *United States v. Jalili,* 925 F.2d 889, 893 (6th Cir. 1991).  However, " '[a] § 2255 motion may not be used to relitigate an issue that was raised on appeal absent highly exception circumstances.'"  *DuPont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996)(quoting *United States v. Brown*, 62 F.3d 1418 (6th Cir. 1995)(unpublished)).  Further, non-constitutional claims not raised at trial or on direct appeal are waived on collateral review except where the errors amount to something akin to a denial of due process.  Accordingly, claims that could have been raised on direct appeal, but were not, will not be entertained on a motion under § 2255 unless the petitioner shows: (1) cause and actual prejudice sufficient to excuse his failure to raise the claims previously; or (2) that he is "actually innocent" of the crime.  *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013) (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)) (internal citations omitted).

**Claim One**

Petitioner asserts the denial of the effective assistance of trial counsel. Petitioner specifically alleges that his attorney failed to investigate or interview various prosecution and defense witnesses and that, through the fault of defense counsel, the Court refused to permit certain testimony from a defense expert witness, Jerry Anderson, regarding his opinion as to the credibility of witnesses. Petitioner maintains that, but for the inadequate performance of his attorney in permitting Anderson to remain in the court room throughout trial, Anderson could have testified that it was Amadou Benya, a worker in Petitioner's office, who had completed and filed all of the false tax returns involved in the charges at issue, and who had committed the criminal acts for which Petitioner was charged and convicted. Petitioner further contends that Anderson could have provided additional information regarding the process and software Petitioner utilized in the preparation of tax returns. Petitioner asserts that his attorney should also have called certain defense witnesses. According to Petitioner, one Dorothy Conley would have testified that it was Benya who completed all of the tax returns started by Petitioner and who had planned to open his own tax preparation office. Petitioner also complains that his attorney failed to call as defense witnesses "Ms. Blanca," Isatu Kamara, "Mr. Tazi, Mr. Akainya, Mr. Bwana, and Mr. Fulton." *Motion to Vacate* (Doc. 154-1, PageID# 2187). Petitioner represents that he prepared tax returns for all of these individuals from 2004 to 2006, and that they would have testified that he had engaged in honest business practices. Petitioner also complains that defense counsel should have asked Erica Brown, a defense witness, about the quality of the tax returns that Petitioner prepared for her from 2004 to 2006, and about the type of information that she provided to him in connection with her tax returns. According to Petitioner, defense counsel improperly failed to interview or properly cross-examine various

prosecution witnesses, including Brian Mahaemba, Maurice Adimando, Zandra Boyd, Gracious Mbowa, Hans Lundenga, Angila Magori and Maimunatu Savage. *Motion to Vacate* (Doc. 154-1, PageID# 2189). Had counsel done so, Petitioner maintains, he would have been able to establish that prosecution witnesses lied, that it was Benya who committed the criminal acts for which Petitioner was convicted, and that at least some of the prosecution's witnesses testified against him out of fear of government reprisals based on their illegal immigration status. Petitioner also alleges that his attorney improperly failed to investigate the amount of loss related to Count 16 of the *Indictment*. He complains that his attorney failed to introduce an amended tax return for Chrispina Kessy for 2007 and failed to point out the inconsistencies in her statements to show that she lied, was aware of the false information included in her tax returns, and subsequently nevertheless asked Petitioner to prepare her 2008 tax return. *Id.* (PageID# 2192-93). Petitioner complains that his attorney failed to follow Petitioner's directions regarding the questions to be asked of each prosecution witness. *Id.* Petitioner also complains that his attorney failed to object to jury instructions that failed to include the essential term "willfully" or to request special verdict forms. *Id.* (PageID# 2200-01). He alleges that his attorney performed in a constitutionally ineffective manner by failing to present oral argument at his sentencing hearing in support of a downward departure from sentence recommended by the advisory United States Sentencing Guidelines. *Id.* (PageID# 2203). Petitioner also alleges that his trial attorney improperly failed to request discovery material and attaches various documents in support of this allegation, including a letter dated April 20, 2015, from defense counsel and a letter that Petitioner apparently wrote to his attorney following the trial. *Id.* (PageID# 2208, 2215-20).

Respondent has submitted the affidavit of Petitioner's trial attorney, *Affidavit of Derek Farmer, Esquire* (Doc. 158-1, PageID# 2275), who avers in relevant part as follows:

6

I was retained as counsel to represent Petitioner Neville Lyimo on March 3, 2012 to replace Mr. Lyimo's previous counsel, Kevin R. Connors. [Doc. #31].

***

At the time I was retained, Mr. Lyimo previously had been indicted on 27 counts of willfully aiding and assisting in the preparation of fraudulent tax returns in violation of 26 U.S.C. § 7206(2). [Doc. #3].

***

With regard to the testimony of Mr. Jerry Anderson, Counsel put forth Mr. Anderson's testimony for its appropriate purpose. Mr. Anderson testified as an expert in the field of IRS regulations and tax. Mr. Anderson's testimony was offered within the limits of an expert witness and Counsel took due care in questioning the witness. Mr. Anderson's presence in the courtroom during trial was entirely appropriate given his status as an expert witness. Some of Mr. Anderson's testimony was excluded by the Court on the ground that it was misleading, confusing and irrelevant insofar as it relied on evidence that was not admitted into evidence. [FRE 402, 403.]

Counsel spent many hours with Jerry Anderson in his office and over the phone, many times with Mr. Lyimo present. I did not want or expect his testimony to be limited and entered an objection at trial. I explained to Mr. Lyimo that the restriction placed on Mr. Anderson's testimony may constitute an issue he could raise on appeal if he chose to do so. . . . During trial Lyimo wanted to show that the "mistakes" he made which the government alleged were crimes were far less than the allowable amount by the IRS. Thus, Anderson was to testify to that fact along with testimony about Lyimo's practices. He was to opine that the wrongs were consistent with mistakes and non-criminal errors – and that a certain percentage of "errors" are accepted and expected by the IRS with Lyimo making far less "mistakes" than the allotted amount. This theory was discussed at the bench and Judge Frost permitted some of it, but not all of it.

Otherwise, Mr. Anderson fulfilled his role as an expert witness regarding IRS regulations and tax. During examination and cross-examination, Counsel effectively responded to objections from the Government and duly questioned the witness.

Counsel states that Ms. Conley's testimony was not necessary or relevant to Mr. Lyimo's defense. Ms. Conley was not a taxpayer with respect to any count for which Mr. Lyimo was charged. Ms. Conley worked in Mr. Lyimo's office. I interviewed Ms. Conley twice, and she did not wish to testify due to her criminal record. Nevertheless, based on the information she provided, I decided that I would call her to refute the testimony of Mr. Lyimo's co-defendant, if the government called him to testify. She only said that the co-defendant was in the office far more often than Lyimo and that he [the co-defendant] acted as if he owned the company and gave customers that impression. She said other things that went to the co-defendant's credibility. Since the co-defendant did not testify as a government witness, her testimony was not needed. Counsel used due care in deciding not to call Ms. Conley.

Assistants United States Attorney, prior defense counsel Connor, former IRS Agent Sarah Peeples, and Neville Lyimo himself, informed me that all the charges brought against Mr. Lyimo concerned <u>tax returns he prepared and filed</u>. Moreover, all the government witnesses whose returns he prepared, testified that he [Lyimo] prepared and filed them and gave each a copy for correction. Thus, Lyimo's apparent present claim that Ms. Conley should have been called to testify that he did not prepare and complete returns is untenable. Furthermore, contrary to Lyimo's current position, no other witness could have truthfully provided testimony that he did not prepare or file the returns.

I attempted to locate and speak to all witnesses with potentially relevant information, which Mr. Lyimo brought to my attention, and who were named in discovery documents provided by the prosecution. We sat down together and went through every name of potential witnesses which appeared in government documents along with names of individuals he provided. I delegated many investigative tasks to Ms. Kate Chapman. She and I spoke to many individuals. We could not locate some of the witnesses as we did not have their current information. Some of them had left the country or had otherwise disappeared. Other witnesses whom we were able to contact refused to speak to me or my investigator. Also, with regard to the purported failure to investigate, interview, and call Ms. Blana, Mr. Kamara, Mr. Tazi, Mr. Akainva, Mr. Bwana or Mr. Fulton to testify on behalf of Mr. Lyimo at trial, Counsel states that the testimony of these purported taxpayers was neither necessary nor relevant to Mr. Lyimo's defense. They were purported or actual clients of Mr. Lyimo regarding whom no charges had been filed. Each charge against Mr. Lyimo was individual, involving one taxpayer only, and did not involve any

other taxpayer. Testimony from these witnesses could not have refuted any claims or otherwise assisted in Mr. Lyimo's defense. The first time I heard of many of these alleged witnesses was when I reviewed the Section 2255 motion at issue.

Through Mr. Lyimo's assistance in the preparation of the trial, I was informed that one government witness had returned back to Africa. Also, my office's investigation and our visit to Columbus State College revealed that Ms. Boyd, contrary to her testimony, had actually enrolled the semester in question. Mr. Lyimo was found not guilty on the charge concerning Ms. Boyd.

With regard to the purported failure to interview Ms. Mbowa prior to trial, Ms. Chapman reported to Counsel that she unable to either locate or establish communications with her (she was either unable to locate her, contact her, or both). Also, Counsel states that pre-trial interview of Ms. Mbowa was unnecessary to conduct a proper and effective examination of Ms. Mbowa. Counsel was under no impression that she was being forced to lie by the prosecution. Her interview statements had been provided to me, and Lyimo never brought her to my office nor did he ever claim that she was "forced" to lie, although he was adamant that she was lying.

With regard to the purported failure to interview Mr. Mahemba prior to trial, Ms. Chapman reported that she tried but was unable to establish contact with him. Counsel also states that pre-trial interview of Mr. Mahemba was unnecessary to conduct a proper and effective examination of Mr. Mahemba. Further, Counsel is unclear as to any complaint regarding Mr. Mahemba because Mr. Lyimo was found not guilty of Count 16, the only count relating to Mr. Mahemba's tax returns.

With regard to the purported failure to interview Ms. Savage, Ms. Kessey, Mr. Poya, Mr. Adimado or Mr. Mwangi prior to trial, Counsel states that Ms. Chapman reported to him that Mr. Mwangi screamed at her on the phone, and questioned her angrily about why she would think he would want to speak to her since he was working with the Government. Ms. Chapman reported that she was able to locate Ms. Savage, but Ms. Savage's father in no uncertain terms informed Chapman that Savage did not wish to speak to her about the case. Mr. Lyimo was made aware of all of these developments. Counsel also states that pre-trial interviews were unnecessary to conduct a proper and effective cross-examinations of those witnesses. Moreover, my experience has been that prosecution witnesses such as these almost never agree to be interviewed prior to trial. Otherwise, Counsel was under no

impression that these witnesses were being forced to lie by the prosecution. The verdict as to Count 10 of the indictment (Ms. Savage) was not guilty.

With regard to the purported failure to develop testimony regarding Mr. Benya's role in tax preparation scheme, Counsel states that evidence regarding Mr. Benya was appropriately developed. Any possible reliance on Mr. Benya's presence likely would not have been necessary or effective in defending Mr. Lyimo. Mr. Benya also had been successfully prosecuted for violations of 26 U.S.C. 7206(2) and, as an employee of Petitioner Lyimo, his testimony very likely would have had disastrous consequences for Petitioner's defense. My office investigated Mr. Benya, and I provided information we found relating to him in reciprocal discovery.

With regard to any purported failure to request Brady Act and Jencks Act material, Counsel received this material from Lyimo's prior attorney who had requested it. [Doc. 15]. Counsel states that, to his knowledge, all appropriate material had been provided by the Government. The Government not only provided a witness list, all sorts of documentation, and the witness interviews, i.e., Jencks materials Lyimo claims I did not request, but these items were provided long before trial. The AUSA even helped me locate a witness for the defense and provided additional documents that I asked for that they had to obtain from the IRS. It and Lyimo's entire file was delivered to my office by Mr. Connor. Mr. Connor and I discussed some of the documents and the case. Therefore, the Government provided more than what it was obligated to and Lyimo knew this because he was in my office several times a week and assisted in everything from locating witnesses to helping clarify documents and their meaning.

With regard to the purported failure to object to the jury verdict form for violation of 26 U.S.C. 7206, Counsel states there was no need to object to the general verdict form because jury instructions adequately explained the charge. Counsel reviewed final jury instructions and they included a mandate that each element of 7206 be proven, that one of those elements was that Mr. Lyimo acted "willfully," and that the instructions defined "willfully." This was sufficient for purpose of charging the jury.

Additionally, with regard to the purported failure to request special verdict forms, Counsel stat that this was unnecessary. In Counsel's judgment, this case was not so complicated as to warrant special

forms, with the jury instructions referenced [] above, being more than sufficient to charge the jury.

Finally, with regard to the purported failure to orally support the motion for downward departure, Counsel states that extensive oral argument was unnecessary to sufficiently support the motion, although the trial court permitted such an argument and said argument was accomplished when counsel addressed the court concerning objections to the PSI.  The Court received the motion for downward departure and there was no obligation or need to speak redundantly on such matters.

***

Mr. Lyimo was appraised at all stages of the litigation and to Counsel's knowledge was fully aware and approved of all strategy for decisions being made by Counsel.

*Affidavit of Derek Farmer, Esquire* (Doc. 158-1, PageID# 2275-79).

### Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel.  *See Strickland v. Washington*, 466 U.S. 668, 686 (1984).  To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that counsel's performance was deficient, or that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed" by the Sixth Amendment, and that this deficient performance prejudiced the petitioner.  *Id*. at 687.  This showing requires that defense counsel's errors were so serious as to deprive the defendant of a fair and reliable trial.  *Id*.

"Surmounting Strickland's high bar is never an easy task."  *Padilla v. Kentucky*, 599 U.S. 356, 371 (2010). Given the difficulties inherent in determining whether an attorney's performance was constitutionally deficient, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. . . ." *Strickland*, 466 U.S. at 689. Nevertheless, "[a]n error by counsel, even if professionally

unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691.  A petitioner, therefore, must show prejudice in order to prevail on a claim of ineffective assistance of counsel. *Id*. at 692.

In order to establish prejudice, a petitioner must establish a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id*. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. Because a petitioner must satisfy both prongs of *Strickland* in order to establish the ineffective assistance of counsel, should a court determine that the petitioner has failed to satisfy one prong, it need not consider the other. *Id*. at 697.

### Application

Jerry Anderson testified at Petitioner's trial as a defense expert in the field of IRS regulations and tax law. *Trial Transcript* (Doc. 117, PageID# 1666, 1671).  He stated, *inter alia*, that it was the obligation of the taxpayer to provide proper information to the tax preparer; otherwise, the tax return would contain incorrect information. *Id.* (PageID# 1672-73).  The tax preparer has a responsibility to act with "due diligence." *Id.* (PageID# 1674).  The tax payer signs the form, indicating that the information on the tax return is true and accurate. *Id.* (PageID# 1675).  Anderson reviewed all of the affidavits and tax returns and was familiar with the "TaxWise software system" used by Petitioner. *Id.* (PageID# 1679-80).  He obtained Petitioner's "preparer's summary report," and therefore knew the number of tax returns that etitioner had prepared, and how much time Petitioner had spent on each return.  Anderson "reviewed [Petitioner's] whole system of how he did things in his office." *Id.* (PageID# 1681). Anderson noted that the IRS had found Petitioner to be compliant in 2004. *Id.* (PageID# 1686, 1688).  It was Anderson's opinion that, as to all of the charges related to 2004, 2005, and 2006,

the taxpayers must have given Petitioner inaccurate information.  *Id.* (PageID# 1721-22).  The trial judge prevented Anderson from testifying as to his opinion "on the credibility of certain taxpayer witnesses who the expert had no direct contact with and with whom the expert witness had no discussions regarding their contact with Defendant."  *Order* (Doc. 133, PageID# 2060).  The record in this action simply fails to establish that the trial judge's ruling in this regard was in any respect the fault of defense counsel, or was based on counsel's deficient performance.  Moreover, nothing in the record supports Petitioner's assertion that Anderson could have testified that it was Benya who committed the criminal acts charged or could have provided any additional testimony that would have assisted the defense.

Similarly, nothing in the record supports Petitioner's claim that Dorothy Conley, or any of the other witnesses to which Petitioner refers, could have provided exculpatory evidence for the defense.  Petitioner represents that Conley could have testified that Petitioner was not always in the office and that Benya was giving clients the impression that he was the owner of the company; but that testimony would not have assisted Petitioner.  Nothing in the record supports Petitioner's contention that Conley would have testified that Benya had developed a scheme whereby he would contact the taxpayers with pending files in order to induce them to return to the office so that he could complete their returns.  *See Reply* (Doc. 161, PageID# 2290).  Even assuming that to be the case, such testimony would not have assisted Petitioner because the tax payers involved in the charges at issue each testified that they spoke to no one other than Petitioner regarding the preparation of their taxes.  Petitioner argues that certain defense witnesses could have testified that Petitioner did not file fraudulent tax returns for them, thereby establishing his innocence, or "state of mind." The Court is not so persuaded, however, and the record fails to support that argument.  An attorney's failure to investigate and call a witness can

constitute the ineffective assistance of counsel where such testimony would have resulted in a reasonable probability of acquittal. *Towns v. Smith*, 395 F.3d 251, 258–60 (6th Cir. 2005). Petitioner has not carried his burden of establishing that his trial counsel was ineffective in this regard.

> The failure to investigate or call a particular witness can constitute ineffective assistance of counsel in violation of the Sixth Amendment. *See, e.g., Clinkscale v. Carter*, 375 F.3d 430, 443 (6th Cir.2004) (collecting cases). But cases in which courts have found ineffective assistance under those circumstances involved not only a complete failure on the part of counsel to investigate the witness, or explain the failure to investigate, but also a showing that the witness or witnesses whom counsel failed to investigate did, in fact, have favorable testimony to offer. *See Stewart v. Wolfenbarger*, 468 F.3d 338, 356–57 (6th Cir. 2006); *Towns v. Smith*, 395 F.3d 251, 258–59 (6th Cir. 2005); *Clinkscale*, 375 F.3d at 443.

*Sowell v. Collins*, 557 F.Supp.2d 843, 883 (S.D. Ohio 2008). Such are not the circumstances here.

Erica Brown testified that she had been Petitioner's client since 2004. *Trial Transcript* (Doc. 117, PageID# 1607). She had referred her aunt and others to Petitioner because she trusted him. *Id.* (PageID# 1608-09). The record does not reflect that Brown could have provided any additional exculpatory evidence, or that Petitioner was prejudiced by counsel's failure to elicit any further information from her. Petitioner has also failed to establish prejudice by reason of his attorney's failure to interview prosecution witness Mahemba. Notably, the jury returned a not guilty verdict on the charge (Count 16) involving Mahemba's tax return. Petitioner likewise has failed to establish prejudice by reason of counsel's alleged failure to investigate the amount of loss related to Count 16, or for any of counsel's alleged failures in regard to the cross-examination of prosecution witness Chrispina Kessy on tax returns that Petitioner prepared for her in 2004 and 2005, because the jury returned a verdict of not guilty on those charges, *i.e.*,

Counts 10 and 11 of the *Indictment*. Further, counsel had no obligation to ask each specific question as requested by the Petitioner. "Courts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel." *Dell v. Straub*, 194 F.Supp.2d 629, 651 (E.D. Mich. Feb. 28, 2002)(citing *Henderson v. Norris*, 118 F.3d 1283, 1287 (8th Cir. 1997)). "Impeachment strategy is a matter of trial tactics, and tactical decisions are not ineffective assistance of counsel simply because in retrospect better tactics may have been available." *Id*. (citing *Johnson v. Hofbauer*, 159 F.Supp.2d 582, 607 (E.D.Mich. 2001)(internal citations omitted)).

Counts 17 and 18 of the *Indictment* charged Petitioner in connection with the 2004 and 2005 tax returns of Gracious Mbowa, *Indictment* (Doc. 3, PageID# 14), and Petitioner was convicted on those counts. Mbowa testified that Petitioner had prepared her tax returns in 2004, 2005, and 2006. *Trial Transcript* (Doc. 114, PageID# 1083, 1085). She left her documents at his office with his secretary. *Id*. (PageID# 1086). Two or three days later, she testified, she returned to the office and signed the forms. *Id*. Mbowa denied ever meeting or speaking to anyone other than Petitioner (aside from the secretary) in connection with the preparation of her tax returns. *Id*. (PageID# 1087). Petitioner prepared her taxes. *Id*. (PageID# 1090). She did not tell Petitioner that she had $8,700 in unreimbursed employee expenses, as he indicated on her tax return. *Id*. (PageID# 1095). She and Petitioner did not review the tax return after it was completed. *Id*. (PageID# 1096-97). She did not read the document. *Id*. (PageID# 1097-98). In 2005, she again left her documents at Petitioner's office. *Id*. (PageID# 1099). The tax return indicated that Petitioner had prepared it. *Id*. (PageID# 1101). The return indicated that she had given $7,932 to charity; she had not done so and she denied telling Petitioner otherwise. *Id*. (PageID# 1101). She also denied telling Petitioner that she had incurred $7,482 in unreimbursed

employee expenses, or that she drove 18,475 miles for business, as he indicated in her tax return. *Id.* (PageID# 1104-05). She did not review the return with Petitioner, and she did not read it when she signed it. *Id.* (PageID# 1107-08). Petitioner signed the tax return above her signature. *Id.* (PageID# 1108). Mbowa had been illegally residing in the United States since 2002. *Id.* (PageID# 1125). She knew that she was violating the laws of the United States. *Id.* (PageID# 1127). She did not tell Petitioner that she was married. *Id.* (PageID# 1137). On cross-examination, Mbowa acknowledged that the information contained in her 2003 tax return, which was filed by someone other than the Petitioner, was also inaccurate. *Id.* (PageID# 1139-42). She never discussed with Petitioner whether she qualified as a "head of household" for tax filing purposes, and Petitioner never asked her about her marital status. *Id.* (PageID# 1148).

The record fails to reflect that Petitioner can establish prejudice, as that term is defined in *Strickland,* by reason of his trial counsel's failure to cross-examine Mbowa regarding the issue of whether or not she had left her papers with Petitioner's secretary or by reason of his counsel's failure to suggest that Petitioner did not employ a secretary.

Petitioner was also convicted on a charge related to the 2005 tax return of Dingani Poya (Count 24). *Indictment* (Doc. 3, PageID# 15). Like Mbowa, Poya was illegally residing in the United States. *Trial Transcript* (Doc. 113, PageID# 847, 864). "NetASk" (Petitioner's company) prepared Poya's 2004 tax return. Poya believed that Petitioner had prepared the tax return. *Id.* (PageID# 848-49). He had gone to that business for three years, although he did not specifically go to Petitioner and it did not matter to him whether it was Petitioner who prepared his tax return. *Id.* (PageID# 853). He went into one of the cubicles and waited there while Petitioner prepared his tax return. *Id.* (PageID# 855). He never met with anyone but Petitioner regarding the preparation of his tax return. *Id.* (PageID# 855-56). The tax return indicated that

16

Petitioner had prepared it.  *Id.* (PageID# 858).  Poya did not attend school in 2004, did not incur $2,000 in school expenses, did not give $2,306 to charity, and did not incur $7,890 in unreimbursed employee expenses, as was indicated on his tax return, nor did he provide Petitioner with such information or provide Petitioner with any documentation to that effect.  *Id.* (PageID# 858-60).  He did not review the tax return with Petitioner when he signed it.  *Id.* (PageID# 860-61).  When Poya advised Petitioner that he was being audited, Petitioner told him to pay the money owed, and said that he could not help.  *Id.* (PageID# 862).  Contrary to Petitioner's allegation here, nothing in the record supports his claim that Poya would have testified that Petitioner did not prepare his tax return in 2004 or that Petitioner had asked Poya for documentation for the figures included in his tax return.  Indeed, Poya testified to the contrary.

Petitioner was also convicted on Counts 19 and 20 of the *Indictment, i.e.,* charges related to the 2004 and 2006 tax returns of Meshack Mwangi.  *Indictment (*Doc. 3, PageID# 14).  On cross-examination, Mwangi acknowledged that he was granted permanent legal residency in the United States in 2009, after speaking to federal agents about this case.  *Trial Transcript* (Doc. 115, PageID# 1203-04).  According to Mwangi, Petitioner prepared his 2004 tax return.  *Trial Transcript* (Doc. 114, PageID# 1162).  He and Petitioner were friends.  *Id.* (PageID# 1163).  Mwangi brought his W-2 form to Petitioner in 2004.  *Id.* (PageID# 1164-65).  He did not stay at the office while Petitioner prepared his tax return;  Petitioner called to tell him that the return was ready.  *Id.* (PageID# 1165).  He never met with anyone other than Petitioner.  *Id.*  Mwangi's 2004 tax return indicated that Petitioner had prepared it.  *Id.* (PageID# 1168).  It also incorrectly indicated that Mwangi had incurred $1,000 in education expenses, that he had paid for his son's education, that he had incurred $3,562 in unreimbursed employee expenses, and that he had

17

given $4,751 to charity.  *Id.* (PageID# 1169-73).  Mwangi denied giving Petitioner that false information or documentation.  He "just signed" the return ecause he trusted Petitioner to do everything for him. *Id.* (PageID# 1173).  He did not read the document before he signed it because he trusted Petitioner and did not know anything about taxes. *Id.* (PageID# 1174).  In 2006, Mwangi again gave Petitioner his W-2 form in connection with the preparation of his taxes.  *Trial Transcript* (Doc. 115, PageID# 1192-93).  That tax return indicated that Petitioner had prepared it.  *Id.* (PageID# 1197).  That tax return also contained false information that Mwangi denied having given to Petitioner. *Id.*(PageID# 1197-1201).  On cross-examination, Mwangi indicated that a person named "Baruchi" had prepared his 2002 and 2003 tax returns.  *Id.* (Doc. 115, PageID# 1207-08).  Mwangi acknowledged that he had provided Petitioner with documents relating to his contributions to charitable organizations. *Id.*(PageID# 1215-17; PageID# 1226-27).

Petitioner was convicted on Counts 1, 2, and 3 of the *Indictment* on charges related to the tax returns of Maurice Adimado for the years 2004, 2005, and 2006.  Adimado testified that Petitioner prepared his tax returns.  *Id.* (PageID# 1317-19).  In 2004, he sat next to Petitioner as Petitioner prepared his tax return on the computer.  *Id.* (PageID# 1320).  He never met with anyone other than Petitioner for the preparation of his 2004 tax return.  *Id.* (PageID# 1320).  The tax return incorrectly indicated that he was single.  *Id.* (PageID# 1321).  The tax return also indicated that Petitioner had prepared it.  *Id.* (PageID# 1322).  The tax return incorrectly indicated that Adimado had spent at least $2,000 on school expenses, had given $4,000 to charity, and had incurred $7,800 in unreimbursed employee expenses.  Adimado denied providing Petitioner any of that false information or documentation.  *Id.* (PageID# 1324-25).  Other than noting the amount of the refund, Adimado did not review his tax return with

18

Petitioner. *Id.* (PageID# 1326). For 2005, Adimado "just dropped off [his] stuff." *Id.* (PageID# 1328). The 2005 tax return listed Petitioner as the return preparer. *Id.* (PageID# 1331). Again, that return included false information regarding school expenses, charitable contributions, unreimbursed employee expenses, business miles driven, and child care expenses and Adimado denied providing such information to the Petitioner, or giving him any such documentation. *Id.* (PageID# 1332-37). Petitioner did not explain the tax return to him, and Adimado denied reading the document before he signed it. *Id.* (PageID# 1338-39). Adimado provided similar testimony regarding Petitioner's preparation of his 2006 tax return. *Id.* (PageID# 1339-44). Adimado spoke with Petitioner when he learned that he was being audited by the IRS. *Id.* (PageID# 1346).

This record fails to establish that defense counsel performed in a constitutionally ineffective manner in the cross-examination of Adimado, Mwangi, or any of the other prosecution witnesses, and Petitioner has not established that he was prejudiced by his trial counsel's performance in that regard. The record also fails to support Petitioner's claim that Mbowa, Mahembe, Poya, or any other witnesses would have testified that it was Benya who prepared their tax returns, or that defense counsel could have established such a defense. Likewise, the record does not support Petitioner's allegation that prosecution witnesses were testifying out of fear of reprisal from the government regarding their immigration status, or that counsel could have established that fact. Petitioner argues that his attorney improperly failed to obtain a copy of the grand jury transcripts, a bill of particulars, and three years of the prior tax returns for the individuals involved in this case. *Reply* (Doc. 161, PageID# 2296). However, the record indicates that Petitioner's prior attorney filed a *Motion for Discovery*, and the government filed a *Response* to that request. *Motion for Discovery* (Doc. 15); *Response to Motion* (Doc. 16).

Further, the record offers no support for Petitioner's allegation that he was prejudiced thereby. Despite Petitioner's argument to the contrary, the record does not indicate that any further investigation by counsel would have assisted the defense.  Moreover, although Petitioner maintains his innocence, *see Reply*, the record reflects substantial evidence of guilt.

Petitioner also claims that he was denied the effective assistance of trial counsel based on his attorney's failure to object to jury instructions because they failed to include the essential term "willfully."  To the contrary, the record clearly establishes that the Court properly instructed the jury on the all the essential elements of the offenses charged, including the requirement that the government establish that Petitioner "acted willfully."  *Trial Transcript* (Doc. 118, PageID# 1887.)

> In order to prove that defendant acted willfully, the government must prove beyond a reasonable doubt that defendant knew federal tax law imposed a duty on him and that defendant intentionally and voluntarily violated that duty.
>
> "Willfully" means to act voluntarily with knowledge that one's conduct is lawful and with the intent to do something the law forbids; it is essentially a voluntary, intentional violation of a known legal duty.
>
> Defendant's conduct was not willful if it was due to negligence, in advertence, or mistake, or was the result of a good faith misunderstanding of the requirement of the law.  It is for you to decide whether defendant acted in good faith, that is, whether he sincerely misunderstood the requirements of the law, or whether he knew that he was – or whether he knew that he was required to do and deliberately did not do so.

*Id.* (PageID# 1889).

> [I]f you find that none of these items was willfully reported and false on the taxpayer's return, then you must find defendant not guilty.

*Id.* (PageID# 1897).  The Court orally instructed the jury and provided the written form of the instructions to the jury for use during its deliberations.  *Id.* (PageID# 1902)("You are invited to use these instructions in any way that will assist you in your deliberations and in arriving at the verdict.").

> These written instructions, which are in exactly the same language as I have given them to you verbally, represent the law that is applicable to the facts as you find the facts to be.  There is a Table of Contents beginning at the first page of these instructions.  You may readily locate any particular instruction by referring to that list.

*Id.*  Petitioner has failed to establish the denial of the effective assistance of counsel on this basis.

Petitioner also alleges that he was denied the effective assistance of trial counsel because his attorney failed to make appropriate oral argument regarding a reduced sentence at his sentencing hearing.  The record indicates that defense counsel filed a written sentencing memorandum prior to the sentencing hearing. *Motion for Downward Departure and Objections to the PSI*  (Doc. 128).  At the sentencing hearing, counsel made various cogent arguments regarding the objections, and then stated, as to the motion for downward departure,

> Again, the Court has heard the evidence.  I don't have to speak. . . . I rest on what I wrote.  The Court heard the evidence.  The Court heard what I heard.  And the Court is clearly in a better position because the Court heard both sides of everything.  So, I trust the Court's wisdom on that issue.

*Sentencing Transcript* (Doc. 153, PageID# 2135).  The Court found that there were no grounds for a downward departure under the sentencing guidelines.  *Id.* (PageID# 2136).  Defense counsel argued that Petitioner had accepted responsibility for his participation in the crimes charged and, pointing out that the government had not charged Benya with the same crimes, indicated that Petitioner had not pleaded guilty only because he denied wrongful intent. Petitioner admitted that he had failed in certain respects, but he denied having a wrongful intent.

*Id.* (PageID# 2137-38).  Petitioner requested the Court's mercy.  *Id.* (PageID# 2142).  The Court imposed concurrent terms of eighteen months' incarceration, sentences that were less than the recommended guideline range of 21-27 months, with one year of supervised release.  This record fails to reflect either that counsel performed in a constitutionally ineffective manner at the sentencing hearing or that Petitioner was prejudiced by his counsel's performance.

Claim one is without merit.

## Claim Two

Petitioner also alleges that he was denied the effective assistance of appellate counsel because his attorney failed to raise on appeal a claim of "plain error" based on "inconsistent jury instructions by stating that petitioner was charged with aiding and assisting and also when the court only included one element of the offense on the verdict forms."  *Reply* (Doc. 161, PageID# 2286).  Petitioner complains that the verdict forms failed to include each element of the offense charged, including the term "willfully," and he alleges that he was denied the effective assistance of appellate counsel because his attorney failed to raise that issue on appeal.  *Id.* (PageID# 2287).

The *Strickland* test applies to appellate counsel.  *Burger v. Kemp*, 483 U.S. 776, 781–82 (1987). Counsel must provide reasonable professional judgment in presenting the appeal.  *Evitts v. Lucey,* 469 U.S. 387, 396–97 (1985).  However, an appellate attorney need not advance every argument urged by the appellant, regardless of the merit of that argument.  *Jones v. Barnes*, 463 U.S. 745, 751–752 (1983).  "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy."  *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 645, 751–52 (1983)).  In order to evaluate a claim of ineffective assistance of appellate counsel, a court must assess the strength of the claim that counsel failed to raise.

*Henness v. Bagley*, 644 F.3d 308 (6th Cir. 2011)(citing *Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008)). Counsel's failure to raise an issue on appeal amounts to ineffective assistance only if a reasonable probability exists that inclusion of the issue would have changed the result of the appeal. *Id*. If a reasonable probability exists that the defendant would have prevailed had the claim been raised on appeal, the court still must consider whether the claim's merit was so compelling that the failure to raise it amounted to ineffective assistance of appellate counsel. *Id*. The Court of Appeals for the Sixth Circuit has identified the following considerations that ought to be taken into account in determining whether counsel on direct appeal performed reasonably competently:

> 1. Were the omitted issues "significant and obvious?"
> 2. Was there arguably contrary authority on the omitted issues?
> 3. Were the omitted issues clearly stronger than those presented?
> 4. Were the omitted issues objected to at trial?
> 5. Were the trial court's rulings subject to deference on appeal?
> 6. Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?
> 7. What was appellate counsel's level of experience and expertise?
> 8. Did the Petitioner and appellate counsel meet and go over possible issues?
> 9. Is there evidence that counsel reviewed all the facts?
> 10. Were the omitted issues dealt with in other assignments of error?
> 11. Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Mapes v. Coyle,* 171 F.3d 408, 427–28 (6th Cir.1999).

 "In order to succeed on a claim of ineffective assistance of appellate counsel, a petitioner must show errors so serious that counsel was scarcely functioning as counsel at all and that those errors undermine the reliability of the defendant's convictions." *McMeans v. Brigano*, 228 F.3d 674 (6th Cir.2000)(citing *Strickland* and *Rust v. Zent*, 17 F.3d 155, 161–62 (6th Cir. 1994)). Counsel's failure to raise an issue on appeal is constitutionally ineffective only if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal.

*McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004)(citing *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).  "Counsel's performance is strongly presumed to be effective." *McFarland,* (quoting *Scott v. Mitchell*, 209 F.3d 854, 880 (6th Cir. 2000) (citing *Strickland*)).  "To prevail on a claim of ineffective assistance of appellate counsel, a petitioner must show that appellate counsel ignored issues [which] are clearly stronger than those presented." *Webb v. Mitchell*, 586 F.3d 383, 399 (6th Cir. 2009); *Smith v. Robbins*, 528 U.S. 259, 288 (2000)(quoting *Gray v. Greer,* 800 F.2d 644, 646 (7th Cir. 1986)).  Petitioner has failed to meet this standard here.

As previously discussed, the record does not establish an error in the jury instructions in connection with the elements of the offenses charged, nor did the verdict forms permit Petitioner to be convicted without the jury's finding of guilt on each and every element of each offense. Trial counsel's failure to request special verdict forms that included the term "willfully" did not amount to plain error nor did it constitute the denial of the effective assistance of trial counsel. *See, e.g., United States v. Little*, 208 F.3d 216, unpublished, 1999 WL 426883, at *5 (6th Cir. 1999)(petitioner failed to establish prejudice by reason of counsel's failure to request special verdict forms); *United States v. MacLloyd*, No. 08-20289, 2014 WL 6612110, at *3 (E.D. Mich. Nov. 20, 2014)(same); *United States v. Clements*, No. 1:13-cr-037, 1:15-cv-173, 2015 WL 7259787, at *5 (N.D. Ohio Nov. 17, 2015)(petitioner failed to establish that special verdict forms would have altered the outcome of his trial). Petitioner has failed to establish the denial of the effective assistance of appellate counsel based on his attorney's failure to raise this issue on appeal.

### Recommended Disposition

Therefore, the Magistrate Judge **RECOMMENDS** that the *Motion to Vacate*  (Doc. 154) be **DISMISSED.**

**Procedure on Objections**

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendati*on will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

    *s/ Norah McCann King*    
Norah McCann King
United States Magistrate Judge
February 10, 2017